IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **GLOBAL EQUITY MANAGEMENT (SA) PTY. LTD.,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EXPEDIA, INC. et al.**<br><br>**Defendants.** | Civil Action No. 2:16-CV-0095-RWS-RSP<br>(Consolidated Lead Case) |

**ALIBABA.COM, INC., ALIBABA SINGAPORE E-COMMERCE PRIVATE LTD., AND ALIBABA.COM HONG KONG LTD.'S MOTION TO STAY OR, IN THE ALTERNATIVE, TO CONSOLIDATE**

Defendants Alibaba.com, Inc., Alibaba Singapore E-Commerce Private Ltd. ("Alibaba Singapore"), and Alibaba.com Hong Kong Ltd. ("AHKL") (collectively, the "Alibaba Defendants") respectfully move to stay this action, pending the resolution of *inter partes* review ("IPR") petitions currently before the Patent Trial and Appeal Board ("PTAB") challenging the validity of all asserted claims of U.S. Patent No. 6,690,400 (the "'400 patent") and U.S. Patent No. 7,356,677 (the "'677 patent") (together, the "patents-in-suit"). In the alternative, the Alibaba Defendants move to consolidate this case into one omnibus case.

I. **INTRODUCTION**

Consistent with other motions currently pending before the Court (*see* Dkts. 151, 152, 154, 156, 166), the case pending against the Alibaba Defendants should be stayed for several reasons. First, a stay will simplify the case. A successful IPR proceeding would streamline the case by eliminating some or all asserted claims; and even if the PTO confirms the validity of all challenged claims, statutory estoppel will streamline invalidity issues by removing from this case

1

prior art that is relied upon or could have been relied upon in the IPR proceedings (even if it does not completely remove all invalidity issues from this case). *See* 35 U.S.C. § 315(e)(2). Second, this case is still in its early stages—the deadline to complete fact discovery is still several months away, and the Court has not yet held a *Markman* hearing or issued a claim construction order. A stay will avoid the prospective unnecessary expenditure of time and resources by both the parties and the Court. Third, GEMSA will not suffer any undue prejudice. GEMSA does not practice the asserted patent (or offer any product or service) or otherwise compete with Defendants, and a stay will not impact GEMSA's ability to litigate the case.

## II.   FACTUAL BACKGROUND

### A.   Procedural History

On October 30, 2015, GEMSA—a non-practicing entity that does not presently make or sell any products—filed five complaints in this Court against a number of companies, including Alibaba.com Inc. and Alibaba Singapore, alleging infringement of the '400 patent. *See* Case No. 2:15-cv-01702, Dkt. 1. GEMSA filed amended complaints in those actions on November 2, 2015, adding claims for infringement of the '677 patent. *See id.*, Dkt. 4.[1] Several months later, on January 29, 2016, GEMSA filed ten additional lawsuits in this Court against various defendants, alleging infringement of the same patents. *See* Dkt. 36. On June 14, 2016, GEMSA filed a third wave of twenty additional lawsuits in this Court, again alleging infringement of the same patents (the "Third Wave Cases"). *See* Dkt. 151 at 3 n.2.

---

[1] On July 19, 2016, GEMSA moved for leave to file a Third Amended Complaint to add AKHL as a defendant to its complaint against Alibaba.com, Inc. and Alibaba Singapore. Dkt. 133. The Court granted the motion the next day. Dkt. 136.

B.  **The Related Amazon Litigation in E.D. Va.**

A majority of the complaints GEMSA has filed in this Court accuse Amazon Web Services ("AWS") as the allegedly infringing instrumentality in the respective defendants' accused websites (Dkt. 151 at 3), although GEMSA's claims against the Alibaba Defendants are not premised on the Alibaba Defendants' use of AWS in configuring the www.alibaba.com website. In response to these allegations, AWS and Vadata, Inc. (which, along with AWS, provides the technology that allegedly infringes the patents-in-suit) (collectively, "Amazon") filed an action on July 22, 2016 in the United States District Court for the Eastern District of Virginia, seeking a declaratory judgment of non-infringement and invalidity of the patents-in-suit. *Amazon Web Services, Inc. et al v. GEMSA*, No. 3-16-cv-00619 (E.D. Va.), Dkt. 1. The present procedural posture of that case has been outlined in other defendants' respective motions to stay. *See, e.g.*, Dkt. 151 at 2-5.[2]

C.  *Inter Partes* **Review of All Asserted Claims**

On September 22, 2016, Alibaba.com Hong Kong Ltd. (along with co-defendants eBay Inc. and Booking.com BV) filed petitions for *inter partes* review, seeking review of the validity of claims 1, 2, 16, and 28 of the '400 patent, and claims 1-7 of the '677 patent. Exs. A, B.[3] As GEMSA alleges that the Alibaba Defendants infringe claims 1, 16, and 28 of the '400 patent and

---

[2] Many of the co-defendants in the consolidated case have filed motions to stay, or, alternatively, to consolidate with the Third Wave Cases, on the basis of the related Amazon litigation. *See* Dkts. 151, 152, 154, 156. All of these motions are pending.

[3] Citations to "Ex. __" are to the exhibits attached to the Declaration of Brett N. Watkins ("Watkins Decl.").

claims 1, 3, and 6 of the '677 patent in this case (*see* Dkt. 150-3 at 1), the IPR petitions seek review of all asserted claims, along with additional non-asserted claims.[4]

### D. The Early Stage of This Litigation

A *Markman* hearing in this case is currently scheduled for November 8, 2016. Dkt. 37 at 2. Fact discovery is set to close January 30, 2017; expert discovery is set to close March 13, 2017; and jury selection is scheduled to begin on June 19, 2017—eight months away and *after* a prospective institution of the requested IPRs concerning the asserted claims of the patents-in-suit. *Id.* at 1-2.

To date, no depositions of any of the Alibaba Defendants' witnesses have been taken, nor have they been scheduled. Watkins Decl. at ¶ 2. Depositions of the named inventors of the patents-in-suit have not been taken, although one has been scheduled. *Id.* at ¶ 3. And no corporate deposition has been taken of GEMSA. *Id.* at ¶ 4. A limited number of third party depositions have been taken. *Id.* ¶ 5.

### E. GEMSA's Deficient Infringement Contentions

On April 1, 2016, GEMSA served its initial infringement contentions on the Alibaba Defendants. Ex. C. On April 19, 2016, the Alibaba Defendants notified GEMSA of various deficiencies in its infringement contentions, including the failure to "identify[] specifically where each element of each asserted claim is found within each Accused Instrumentality," as required by P.R. 3-1(c). Ex. D. In response, GEMSA amended its infringement contentions on May 6, 2016, then again on May 12, 2016. Exs. E, F. The amended infringement contentions

---

[4] eBay, Inc. has also filed a motion to stay, or, alternatively, to consolidate with the Third Wave Cases, on the basis of the IPRs challenging all asserted claims. Dkt. 166. This motion is currently pending.

completely changed GEMSA's theory of infringement when compared with the original version served on April 1, 2016. *Compare* Ex. C *with* Ex. F.

On June 24, 2016, the Alibaba Defendants notified GEMSA that its amended infringement contentions were also deficient. Ex. G. The Alibaba Defendants noted that GEMSA's theory of infringement as disclosed in the amended infringement contentions was "apparently based on the assumption that there is some relationship between AliCloud and the alibaba.com website." *Id.* at 2. In particular, GEMSA's amended infringement contentions identified "the GUI, platforms, hardware, software, and algorithms used (including used by incorporation) for the operation, administration, and/or management of ***www.Alibaba.com***," but then proceeded to allege infringement by citations to ***www.alicloud.com and aliyun.com*** as allegedly being used in the operation, administration, and/or management of www.Alibaba.com. *See id.* The Alibaba Defendants explained that "there is no relationship between www.alibaba.com and AliCloud. The www.alibaba.com website is not operated, administered, managed, or supported in any way by AliCloud, alicloud.com, or aliyun.com." *Id.* As such, the Alibaba Defendants explained that "GEMSA has failed to 'identify[] specifically where each element of each asserted claim is found within each Accused Instrumentality,' as required by P.R. 3-1(c), and has in fact provided no analysis of how it believes www.alibaba.com allegedly infringes any claim of the '400 or '677 patents." *Id.* The Alibaba Defendants requested that GEMSA supplement its infringement contentions to address the identified deficiencies by July 8, 2016. *Id.* at 3. To date, GEMSA has not done so.

### III. ARGUMENT

#### A. The Court Should Stay the Litigation Pending *Inter Partes* Review

The Court should stay the litigation pending resolution of the IPR petitions challenging the validity of all of the claims being asserted in this case. Courts have "the inherent power to

5

manage their dockets and stay proceedings, including the authority to order a stay pending conclusion of a PTO reexamination." *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-CV-384-JDL, 2014 WL 5035718, at *2 (E.D. Tex. Oct. 8, 2014) (quoting *Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988)). A stay is "particularly justified when the outcome of a PTO proceeding is likely to assist the court in determining patent validity or eliminate the need to try infringement issues." *NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *1 (E.D. Tex. Mar. 11, 2015) (internal quotations omitted).

District courts typically consider three factors when determining whether to grant a stay pending *inter partes* review of a patent-in-suit: (1) whether the stay will likely result in simplifying the case before the court; (2) whether the proceedings before the court have reached an advanced stage, including whether discovery is complete and a trial date has been set; and (3) whether the stay will unduly prejudice the nonmoving party. *Id.* at *2. Courts also consider whether a stay, or the denial thereof, will reduce the burden of litigation on the parties and on the court. *Id.*

Here, all of the relevant factors weigh in favor of a stay.

### 1. A Stay Pending Resolution of the *Inter Partes* Reviews Will Streamline the Issues In This Case

The resolution of the IPR petitions filed with respect to the asserted claims of the patents-in-suit will simplify the issues in this case. Should the PTAB institute IPR proceedings for the patents-in-suit, the review "could dispose of the entire litigation: the ultimate simplification of issues." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1314 (Fed. Cir. 2014). Courts therefore routinely find that "[s]taying the litigation pending the PTAB's determination of the validity of all the asserted claims of the . . . patents-in-suit could narrow the issues before the court, prevent duplicative or unnecessary discovery, and encourage settlement or dismissal."

*Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-CV-384-JDL, 2014 WL 5035718, at *3 (E.D. Tex. Oct. 8, 2014).

Moreover, even if the asserted claims are not found invalid, the IPR proceedings will likely impact the Court's construction of the claims of the patents-in-suit to the extent that they are likely to result in additional intrinsic evidence relating to the patents-in-suit. Statements made by the patentee during prosecution, including during proceedings before the PTAB, form part of the public record that must be considered by the Court during claim construction. *See, e.g.*, *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1266 (Fed. Cir. 2012) ("A patentee's statements during reexamination can be considered during claim construction, in keeping with the doctrine of prosecution disclaimer."). Accordingly, intrinsic evidence newly created during the IPR is directly relevant to claim construction. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995) (en banc), *aff'd,* 517 U.S. 370 (1996). Entry of a claim construction ruling before the PTAB decides whether to institute the IPR could therefore result in the need for additional claim construction efforts, such as supplemental briefing or a second hearing. A stay of the litigation will afford the Court the opportunity to have a complete picture of the patent-in-suits' intrinsic evidence before making any ruling on claim construction.

And even though the IPRs have not been instituted yet, this motion to stay is not premature. It comes at an optimal point in the litigation. It is anticipated that the PTAB will make its decision whether or not to institute the IPRs by March 2017. 35 U.S.C. § 314(b). That date is three months before jury selection. If this motion to stay is not entertained until the IPR petitions are instituted, then tremendous party and Court resources will be spent on this case notwithstanding the potential for it to be mooted by the PTAB's decisions. Thus, any potential benefits of a stay will effectively be lost if the decision to stay is tabled until the PTAB makes its

institution decision. On the other hand, if a stay is granted now and the PTAB declines to institute the IPR petitions in their entirety, or decides only to proceed with review of some of the asserted claims, then the litigation may resume with only a relatively short period of delay having been incurred. *See, e.g.*, *Transocean Offshore Deepwater Drilling, Inc. v. Seadrill Americas, Inc.*, No. CIV.A. H-15-144, 2015 WL 6394436, at *6 (S.D. Tex. Oct. 22, 2015) ("[I]f the court delays granting a stay and the PTAB decides to institute IPR . . . , the parties will have already incurred significant expenses related to claim construction briefing, the *Markman* hearing, and discovery. On the other hand, if the PTAB decides ***not*** to institute IPR, [plaintiff] can easily be compensated for any costs it incurs as a result of a five month litigation stay.") (citation omitted).

Moreover, as GEMSA has asserted the same patents-in-suit in over 35 different cases filed in this Court—a number of which are not subject to the present schedule of the consolidated case, and trail this schedule by a number of months—the combined potential savings of unnecessary expenditures would extend to all of the cases concerning the patents-in-suit currently pending before the Court. *See, e.g.*, *Micrografx, LLC v. Samsung Telecommunications Am., LLC*, No. 3:13-CV-3599-N, 2014 WL 8239371, at *2 (N.D. Tex. July 9, 2014) (finding the potential savings of unnecessary expenditures associated with litigation "would be twofold" where the plaintiff had asserted the same patents against different defendants in a related case).

Thus, the potential simplification of issues in this case, as well as in the torrent of related cases GEMSA has brought in this Court and continues to bring, heavily favors a stay.

### 2. A Stay Will Not Unduly Prejudice GEMSA

GEMSA will not be unduly prejudiced by a stay. Courts have found that a "delay caused by the *inter partes* review process, without more, does not justify denial of a stay. Rather, the *inter partes* review was designed to create efficiencies and proceed in a timely fashion. Thus,

the length of the *inter partes* review alone does not establish prejudice." *Micrografx, LLC*, 2014 WL 8239371, at *1; *see also NFC Tech. LLC v. HTC Am., Inc.*, No. 2:13-CV-1058-WCB, 2015 WL 1069111, at *2 (E.D. Tex. Mar. 11, 2015) ("[T]he delay inherent in granting a stay . . . is present in every case in which a patentee resists a stay, and it is therefore not sufficient, standing alone, to defeat a stay motion."). Nor does a "blanket statement that evidence may become stale or be lost" during the stay "amount to a compelling showing of prejudice," even if such an allegation could be made here (it cannot). *NFC Tech. LLC*, 2015 WL 1069111, at *2. Instead, courts find that "[l]imiting the stay to the culmination of the IPR proceedings will ensure that the stay is finite and not unduly prejudicial," as well as "conserve the time and resources of both parties." *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-CV-384-JDL, 2014 WL 5035718, at *3 (E.D. Tex. Oct. 8, 2014). GEMSA will not suffer any undue prejudice from the delay caused by the *inter partes* review process. Instead, a temporary stay will conserve the time and resources of all parties and the Court.

Further, a temporary stay will not prejudice GEMSA because it does not practice the patents-in-suit. Any monetary damages GEMSA may recover (assuming GEMSA is successful before the PTAB and this Court) will remain the same even if they are awarded after a stay. In the meantime, GEMSA's ability to monetize the patents-in-suit through negotiations with or enforcement against other parties also remains unaffected. *See, e.g.*, *Micrografx, LLC*, 2014 WL 8239371, at *2 (finding no undue prejudice from a stay even where the patents-in-suit were close to expiring because the plaintiff did not practice the patents-in-suit and its right to monetary damages for the period of infringement would not be affected by the stay); *Emtel, Inc. v. Lipidlabs, Inc.*, No. CIV.A. H-07-1798, 2013 WL 1707678, at *6 (S.D. Tex. Apr. 19, 2013) (same).

Because GEMSA will not suffer undue prejudice, this factor favors granting a stay.

### 3. This Litigation Is In Its Early Stages

A stay is also warranted because this litigation is not particularly advanced, and discovery is not yet complete. A case "need not be in its infancy to warrant a stay." *Norman IP Holdings, LLC v. TP-Link Techs., Co.*, No. 6:13-CV-384-JDL, 2014 WL 5035718, at *3 (E.D. Tex. Oct. 8, 2014) (internal quotations omitted). Rather, "[c]ourts often find the stage of litigation weighs in favor of a stay if there remains a significant amount of work ahead for the parties and the court, even when the parties and/or the court have already devoted substantial resources to the litigation." *Id.* (internal quotations omitted). As the Federal Circuit has recognized, even where "the parties have conducted some discovery, we must also be mindful of the burden on the parties and the court in completing both fact and expert discovery, resolving summary judgment motions, completing the Markman process, and preparing for trial." *Versata Software, Inc. v. Callidus Software, Inc.*, 771 F.3d 1368, 1374 (Fed. Cir. 2014), *vacated on other grounds,* 780 F.3d 1134 (Fed. Cir. 2015).

Even though this case was filed approximately one year ago, it is similarly postured, as there is still much work and expense remaining ahead for the parties and the Court. The parties have yet to complete fact discovery, which is set to close on January 30, 2017. Dkt. 37 at 2. In particular, only a limited number of depositions have been—GEMSA has taken no depositions of any of the Alibaba Defendants' witnesses to date, the inventors' depositions have not been taken, and no corporate deposition has been taken of Plaintiff. Watkins Decl. ¶¶ 2-5. The *Markman* process also has yet to be completed. While upcoming on November 8, 2016, the *Markman* hearing has not yet taken place. And the deadline to complete expert discovery is not for another five months; correspondingly, expert discovery has not even begun. Dkt. 37 at 1. Furthermore,

at this time, the parties have not yet begun to expend any resources for trial preparation. A stay at this point will therefore save all of the parties and the Court from unnecessarily expending resources pursuing or defending against claims and positions that will be addressed and likely resolved by the PTAB if IPR is instituted.

Lastly, the Alibaba Defendants have acted diligently in seeking *inter partes* review of the patents-in-suit and in filing the instant motion to stay. GEMSA served its amended infringement contentions on May 12, 2016, which were completely different from its infringement contentions served on April 1, 2016. Ex. F. Despite the continuing deficiencies in GEMSA's infringement contentions, and the continued failure of these contentions to put the Alibaba Defendants on notice of what GEMSA's actual infringement positions are, AHKL filed its IPR petitions on September 22, 2016, four months after being served with these amended contentions. Exs. A, B. Courts routinely recognize that such a timeline constitutes diligence "[g]iven the complexity entailed in seeking inter partes review . . . ." *NFC Tech. LLC*, 2015 WL 1069111, at *4 (finding diligence where the IPR petitions were filed four months after plaintiff served its infringement contentions on defendant); *see also ACQIS, LLC v. EMC Corp.*, 109 F. Supp. 3d 352, 359 (D. Mass. 2015) ("It was reasonable for EMC to wait for ACQIS to choose which claims it intended to assert in the litigation before pursuing IPRs. Once ACQIS served its infringement contentions, EMC prepared and filed its IPR petitions in a timely manner—within four months."); *Software Rights Archive, LLC v. Facebook, Inc.,* No. 12–3970, 2013 WL 5225522, at **5-6 (N.D. Cal. Sept. 17, 2013) (filing IPR petitions over four months after service of infringement contentions was reasonable). The instant motion to stay was filed just over a month after the filing of the IPR petitions.

This third factor therefore also favors granting a stay.

11

### B. Alternatively, The Court Should Vacate The Docket Control Order In This Case And Consolidate This Case With The Third Wave Cases

Should the Court deny the motion to stay, judicial efficiency would be best served by vacating the Docket Control Order in this case (Dkt. 37) and consolidating this action with the Third Wave Cases. "Rule 42(a) of the Federal Rules of Civil Procedure and Local Rule CV–42(b) provide that a trial court may consolidate actions involving common questions of law or fact, especially when doing so will avoid unnecessary cost or delay." *Canal Barge Co. v. Tubal-Cain Marine Servs., Inc.*, Case No. CIV. A. 1:09-CV-533, 2009 WL 4723368, at *1 (E.D. Tex. Dec. 7, 2009). Such consolidation is warranted here for at least three reasons.

First, the case against the Alibaba Defendants and the twenty Third Wave Cases all share the same plaintiff and patents-in-suit. When two sets of cases share such fundamental features, consolidation is appropriate. *See, e.g.*, *Innovative Automation, LLC v. Audio Video & Video Labs, Inc.*, Case No. 6:11-CV- 234 LED-JDL, 2012 WL 10816848, at *14 (E.D. Tex. May 30, 2012) (granting consolidation and noting that "[t]he existence of a common question by itself is enough to permit consolidation under Rule 42(a), even if the claims arise out of independent transactions.") (internal quotation marks omitted).

Second, consolidation will allow for the common adjudication of invalidity defenses. Because GEMSA has asserted the same patents against the Alibaba Defendants as it has against the defendants in the Third Wave Cases, consolidation would allow all parties to share invalidity arguments and reap the common benefits of a single determination of their invalidity defenses. Consolidating this case with the Third Wave Cases will also result in efficiencies relating to claim construction, allowing the Court to issue a single claim construction for the patents-in-suit.

Third, there will be no harm to GEMSA from consolidation. GEMSA is a non-practicing entity that does not practice the patents-in-suit and therefore will not suffer any undue prejudice

caused by any slight delay, if any, that results from the consolidation. *See, e.g.*, *Micrografx, LLC*, 2014 WL 8239371, at *2; *Emtel, Inc.*, 2013 WL 1707678, at *6.[5]

Therefore, if the Court denies the motion to stay, the Court should consolidate this action with the Third Wave Cases pursuant to Federal Rule of Civil Procedure 42(a).

## IV.     CONCLUSION

For the foregoing reasons, the Alibaba Defendants respectfully request that the Court stay GEMSA's claims against the Alibaba Defendants in Case Nos. 2-16-cv-00095, 2-15-cv-01702, and 2-15-cv-01700, pending resolution of the IPR petitions filed on the patents-in-suit, or, in the alternative, vacate the Docket Control Order and consolidate this action with the Third Wave Cases.

---

[5] If this case is consolidated with the Third Wave Cases, the current schedule in this case should be pushed back to conform to the schedule in these later-filed cases. Doing the opposite—moving the schedule in the later-filed cases up to conform to the current schedule in this case—would be highly prejudicial and provide insufficient notice to the defendants in those cases, given that this case has been proceeding for a year. Pushing the schedules back for consolidation would also be fair in view of GEMSA's shifting infringement positions.

Dated:  October 28, 2016

Respectfully Submitted,

 */s/   J. Mark Mann*
 MANN TINDEL THOMPSON
J. Mark Mann
Texas Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
Texas Bar No. 24042033
blake@themannfirm.com
MANN TINDEL THOMPSON
300 West Main
Henderson, Texas 75652
Telephone:  903.657.8540
Facsimile: 903.657.6003
LOCAL COUNSEL

Carey R. Ramos
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: 212.849.7000
Facsimile: 212.849.7100
careyramos@quinnemanuel.com
LEAD COUNSEL

Jeffrey S. Gerchick
Brett N. Watkins
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street NW, 11th Floor
Washington, D.C. 20001-3706
Telephone:  202.538.8000
Facsimile: 202.538.8100
jeffgerchick@quinnemanuel.com
brettwatkins@quinnemanuel.com

*Attorneys for Defendants Alibaba.com, Inc., Alibaba Singapore E-Commerce Private Ltd., and Alibaba.com Hong Kong Ltd.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) on October 28, 2016.

/s/ *J. Mark Mann*
J. Mark Mann

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), Brett Watkins, counsel for Defendants Alibaba.com, Inc., Alibaba Singapore E-Commerce Private Ltd., and Alibaba.com Hong Kong Ltd., conferred with William Ramey, counsel for Plaintiff Global Equity Management (SA) Pty. Ltd. by phone on October 28, 2016 regarding the motion to stay. Plaintiff's counsel advised that it would oppose this motion.

/s/ *J. Mark Mann*
J. Mark Mann